# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDRE L. SCOTT,

            Petitioner,

v.

LANCE WIERSMA,

            Respondent.

Case No. 22-CV-332-JPS

**ORDER**

## 1. INTRODUCTION

On April 11, 2023, this Court granted Petitioner Andre L. Scott's ("Petitioner") petition to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2254. ECF No. 16. On May 9, 2023, Respondent Lance Wiersma ("Respondent") moved to alter or amend the judgment pursuant to Rule 59(e). ECF No. 18. Specifically, Respondent asks the Court to "either stay the judgment pending [Petitioner's] return to state custody or dismiss this action because of [Petitioner's] fugitive status." *Id*. For the reasons discussed herein, the Court will deny the motion.

## 2. BACKGROUND

Petitioner was convicted in Milwaukee County Circuit Court Case No. 2009CF136 on two counts of battery and on a single count each of disorderly conduct and kidnapping. ECF No. 16 at 6, 15. Following Petitioner's conviction, postconviction relief and appellate efforts were "substantially delayed due to continuing concern about Petitioner's competency." *Id*. at 17. In 2016, Petitioner was involuntarily medicated to a state of competency. *Id*. The matter of his involuntary medication went before the Wisconsin Supreme Court, where it was determined that the

"involuntary medication order was issued prematurely and was invalid." *Id*. at 17–18. Accordingly, in 2018, the court appointed Petitioner a temporary guardian to make appellate and postconviction decisions on his behalf. *Id*. at 18.

In October 2018, postconviction counsel sought relief on the ground that Petitioner was denied his right to procedural due process under *Pate v. Robinson*, 383 U.S. 375 (1966). *Id.* The court denied the motion, asserting that it had "no reason to doubt the defendant's competency before, during, or after the trial . . . ." *Id.* (citation omitted). The Wisconsin Court of Appeals reversed in part, holding that the circuit court erroneously exercised its discretion in finding that there was no reason to doubt Petitioner's competency at the time of sentencing. *Id*. at 18–19. It agreed with the circuit court, however, that there was no reason to doubt Petitioner's competency at trial, just five weeks before his sentencing. *Id*. at 19. In November 2020, the Wisconsin Court of Appeals remanded Petitioner's case back to the circuit court for further proceedings with respect to resentencing. ECF No. 22 at 1.

Petitioner's § 2254 petition then came before this Court in March 2022. Petitioner asked the Court to find that "the Wisconsin Court of Appeals proceeded contrary to and/or pursuant to an unreasonable application of *Pate* when it affirmed the [circuit court's] conclusion that it had no reason to doubt Petitioner's competency at trial." ECF No. 16 at 19–20. Over the next nine months, the petition made its way through this Court and eventually became fully briefed. ECF Nos. 11, 14 (Respondent's opposition brief filed October 13, 2022), and 15.

On May 26, 2022, while the § 2254 petition remained pending, the circuit court held a hearing on the matter of Petitioner's competency with

respect to sentencing. ECF No. 22-1. Petitioner was represented both by counsel, Attorney Thomas Reed ("Reed"), and by a guardian ad litem, Megan Murray ("Murray"). *Id.* at 2. Petitioner did not himself appear. In light of "the appearance of the guardian" for Petitioner, the circuit court waived his personal appearance. *Id.*

The circuit court noted that the Wisconsin Court of Appeals had "referred [this matter] for a retrospective competency hearing." *Id*. The State noted that this was "a unique situation," and represented that the State did not intend to challenge the "Doctor's report," which concluded retrospectively that Petitioner was not competent at the time of his sentencing in 2009. *Id*. at 3. Accordingly, the court "adopt[ed] the report" and its finding that Petitioner "was not competent to proceed at the time that the sentencing went forward in October of 2009," and it vacated the sentence then imposed. *Id*. at 4–5, 14.

The issue therefore became one of resentencing, which was complicated by the fact that Petitioner was likely still not competent. *Id*. at 5–6, 14 ("So I think we have to get [Petitioner] back into a competency evaluation posture in order to address the resentencing issues."). The court concluded that "[t]here is reason to doubt [Petitioner's] competency to proceed in this matter and as such, this Court will order that [he] shall submit to an examination of his competency to proceed." *Id*. at 6, 15. The State indicated that it "d[idn't] think anyone doubts that whatever evaluation we're going to get for this is going to be not competent." *Id*. at 12.

The court also acknowledged that Petitioner had "not personally appeared or come to court for quite a long time," which concerned the court with respect to Petitioner's "follow through" to appear for renewed

competency proceedings and resentencing. *Id*. at 16. "In fact, the last time he came to court, I believe, was December of last year . . . ." *Id.* Accordingly, the Court imposed a bench warrant for Petitioner. *Id*. at 17; *see also* ECF No. 19-1 at 6.

Thereafter, Petitioner failed to appear for his competency evaluation and a subsequent court hearing. The state criminal case docket indicates that, as of June 24, 2022, the bench warrant for Petitioner remained in place because he "did not appear for his evaluation." ECF No. 19-1 at 5. Neither party to Petitioner's habeas proceedings made any mention of this in their filings to the Court. Respondent's brief in opposition, filed in October 2022, makes no reference to Petitioner's alleged fugitive status nor any argument based thereon.

In April 2023, this Court granted Petitioner's § 2254 petition, concluding that "there was [a] bona fide doubt [as to Petitioner's competency to stand trial] and . . . it was unreasonable to find otherwise." ECF No. 16 at 32. The Court also concluded that the custodial requirement of habeas was satisfied since Petitioner was awaiting resentencing. *See id*. at 20 n.12 (quoting *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 894 (2d Cir. 1996) ("[A] person released on his own recognizance pending sentencing after a state court conviction is 'in custody' for habeas jurisdictional purposes . . . .")).[1] Accordingly, the Court ordered that "Petitioner be released from custody within 120 days of the entry of [the] Order and judgment unless the State of Wisconsin elects to retry him." *Id.* at 34.

---

[1] The Court addressed the in-custody requirement for the sake of thoroughness, notwithstanding that the parties themselves did not raise or discuss the in-custody requirement at all in their briefing on the petition. *Id.*

Respondent now moves to alter or amend the judgment with respect to the Court's granting of the § 2254 petition. ECF No. 18. Specifically, Respondent requests that the Court either "further stay[] [the judgment] pending [Petitioner's] return to custody," or "alter the judgment to provide that the petition is dismissed under the fugitive disentitlement doctrine." ECF No. 19 at 3.

**3. LAW AND ANALYSIS**

Respondent moves to amend this Court's judgment, dated April 11, 2023, pursuant to Rule 59(e). ECF No. 18. As a threshold matter, that rule provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(e). Respondent's motion is timely. Nevertheless, Respondent has not demonstrated that alteration or amendment of the Court's judgment is appropriate.

Amendment or alteration of a judgment pursuant to Rule 59(e) is appropriate only in limited circumstances. "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or of fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Instead, "[i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Id.* (internal citation omitted). Indeed, "[t]he purpose of a Rule 59(e) motion is to enable a district court to correct its own errors and thus avoid unnecessary appellate procedures." *Westerfield v. Quizno's Franchise Co., LLC*, No. 06-C-

1210, 2008 U.S. Dist. LEXIS 74398, at *8 (E.D. Wis. Apr. 16, 2008) (citing *Divane v. Krull Elec. Co.*, 194 F.3d 845, 848 (7th Cir. 1999)).

Critically, however, Rule 59(e) does not offer "a fresh opportunity to present evidence that could have been presented earlier." *Edgewood Manor Apartment Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013). It is "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment." *LB Credit Corp. v. Resol. Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995).

Respondent's motion fails precisely because it is grounded in arguments and information that could have been presented months earlier. Respondent argues that the Court should alter its judgment—either by staying the judgment or going back on its habeas grant altogether—because Petitioner is "a fugitive from justice." ECF No. 19 at 2. Respondent asserts that "[t]he newly discovered evidence here is that [Petitioner] absconded from state custody just over two months after he invoked this Court's jurisdiction by filing" his habeas petition. *Id*. at 3.

These arguments are meritless, and Respondent's characterization of Petitioner's "abscond[ing] from state custody" a *year* ago as "newly discovered evidence" is frankly ludicrous. Newly discovered evidence for purposes of Rule 59(e) is that which either "(1) did not exist at the time of the court's order or (2) the moving party did not discover until after the court's order, despite exercising reasonable diligence to obtain the evidence earlier." *Boehm v. Moncher*, No. 16-cv-600-jdp, 2017 U.S. Dist. LEXIS 148965, at *8 (W.D. Wis. Sept. 13, 2017). It cannot be said that records indicating Petitioner's failure to appear for his state proceedings "did not exist" at the time of this Court's order—to the contrary, such records are publicly accessible. ECF No. 21 at 6–7, ECF No. 19 at 4 (referencing Petitioner's

failure to appear in state court for proceedings in May and June 2022). Nor can the Court conclude that Respondent was unable to learn of Petitioner's alleged fugitive status earlier notwithstanding Respondent's exercise of reasonable diligence. To the contrary, Respondent's briefing lacks reference to any reasonable diligence exercised with respect to discovering Petitioner's alleged fugitive status.

If Respondent genuinely believed that Petitioner's failure to appear for his state proceedings was material, or perhaps even dispositive, to Petitioner's federal habeas proceedings, then it goes without saying that the prudent time to have raised the issue was long, long ago—during the briefing on the habeas petition. At any point during the briefing on this matter (or even after, through a motion for leave to supplement the record), Respondent could have alerted the Court to this issue that it now insists should bar Petitioner from habeas relief. Respondent failed to do so. Respondent has accordingly forfeited the argument and cannot obtain Rule 59(e) relief based thereon. *See Studio & Partners, s.r.l. v. KI*, No. 06-c-0628, 2008 U.S. Dist. LEXIS 11321, at *32 (E.D. Wis. Feb. 14, 2008) ("The parties' arguments—especially when both sides are represented by counsel—are precisely what frame a court's approach to an issue, and a court should be entitled to rely on what the parties argue in their briefs.") (citing *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.")).

Moreover, even if Respondent had not forfeited the argument he now proffers, the Court would still not be inclined to apply the fugitive disentitlement doctrine in this case. The fugitive disentitlement doctrine is "[a]n equitable doctrine" and "a discretionary device by which courts may

Page 7 of 11
Case 2:22-cv-00332-JPS    Filed 06/16/23    Page 7 of 11    Document 25

dismiss criminal appeals or civil actions by or against individuals who are fugitives from justice." *Ener v. Martin*, 987 F.3d 1328, 1331 (11th Cir. 2021); *Gutierrez-Almazan v. Gonzales*, 453 F.3d 956, 957 (7th Cir. 2006). The U.S. Supreme Court has stated that the "premise of [the] disentitlement theory is that 'the fugitive from justice has demonstrated such disrespect for the legal processes that he has no right to call upon the court to adjudicate his claim.'" *Ortega-Rodriguez v. United States*, 507 U.S. 234, 246 (1993) (citation omitted).

The Court agrees with Petitioner that, in light of Petitioner's "conceded incompetence," application of the fugitive disentitlement doctrine is inappropriate and inequitable in this case. ECF No. 21 at 1. Petitioner suffers from largely untreated paranoid schizophrenia. The circuit court appointed him a guardian ad litem to make appellate and postconviction decisions on his behalf. Petitioner did not himself, personally, choose to invoke this Court's jurisdiction by filing a federal habeas petition. It is not even clear if he is aware that such a decision was made. Such is the case because he has been deemed incompetent to make that decision for himself. To therefore suggest that Petitioner is somehow consciously taking advantage of the judicial system by simultaneously seeking habeas relief while failing to appear for his state proceedings denies reality.

Respondent also argues that this Court committed a "manifest error of fact" by falsely assuming that Petitioner "was in state 'custody' while this case was pending and when this Court issued its judgment and order granting the writ." ECF No. 19 at 4. Respondent asserts that although Petitioner "was in custody when he filed the writ, he absconded from state custody just over two months later, making this case moot." *Id*. "This Court

certainly was unaware," Respondent writes, "when it issued the writ that [Petitioner's] absconding effectively rendered it unable to grant redress for his allegedly unlawful custody." *Id.*

Again, Respondent had months and months' worth of opportunity to make this argument to the Court in a timely manner. He did not do so. As Respondent only now correctly notes, a court cannot grant a writ of habeas corpus to a petitioner who is not "in custody." 28 U.S.C. § 2254; *Maleng v. Cook*, 490 U.S. 488, 490–91 (1989). Respondent did not address § 2254's custodial requirement in any fashion in the briefing on this petition. The Court addressed the matter *sua sponte*, noting that "although the parties d[id] not address it," Petitioner was still due to be resentenced, and therefore concluded without the benefit of briefing that this sufficed for § 2254's custodial requirement. ECF No. 16 at 20 n.12. (quoting *Poodry*, 85 F.3d at 894).

Respondent's untimely argument with respect to Petitioner's custodial status fails. "In order to satisfy the custody requirement, the petitioner must be in custody at the time the petition is filed in federal court." BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:4 (2019). "But once the petition is filed in federal court, it does not matter if the petitioner is later released from custody for purposes of the 'in custody' requirement." *Id.* (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[W]e conclude that under the statutory scheme, once the federal jurisdiction has attached in the District Court, it is not defeated by the release of the petitioner prior to completion of proceedings on such application.")).

And as the Court noted in its order granting Petitioner's § 2254 petition, the fact that Petitioner had already concluded his term of imprisonment at the time of the filing of his petition does not necessarily

disqualify him from seeking habeas relief. *See Marten v. Purdy*, 409 F.2d 784, 785 (5th Cir. 1969) ("[T]he use of habeas corpus is not restricted 'to situations in which the applicant is in actual, physical custody . . . .'") (citation omitted).

Respondent cites *Lauderdale-El v. Indiana Parole Board*, 35 F.4th 572, 575 (7th Cir. 2022) for the proposition that "[a] challenge to a petitioner's custody becomes moot when custody ends and no collateral consequences remain," ECF No. 19 at 4, but that case is inapplicable in these circumstances. "[C]ollateral consequences" of Petitioner's conviction remained in the sense that he remained obligated to appear before the state court for proceedings with respect to his resentencing. *Lauderdale-El*, 35 F.4th at 575. "[T]he custody requirement is satisfied if the petitioner, subject to retrial proceedings as the result of a reversal on direct appeal or the grant of habeas relief, remains subject to conditions that restrain the petitioner's liberty in a way not shared by the public generally, such as own recognizance release or bail." BRIAN R. MEANS, FEDERAL HABEAS MANUAL § 1:8 (2019). Such is the case here.[2]

4. **CONCLUSION**

Respondent argues, *inter alia*, that this Court should vacate its order and judgment granting habeas relief to Petitioner because doing so would best serve "this Court's interest in efficient practice." ECF No. 19 at 7

---

[2]The in-custody requirement was also satisfied by virtue of the fact that, at the time of the filing of the § 2254 petition, Petitioner was "serving his extended supervision." ECF No. 21 at 2; *see In re Stansell*, 828 F.3d 412, 416 (6th Cir. 2016) ("Individuals subject to post-release control, like individuals subject to supervised release in the federal system, satisfy the 'in custody' requirement."); *Clarke v. United States*, 703 F.3d 1098, 1101 (7th Cir. 2013) ("[S]upervised release is classified as a form of custody.").

(internal quotation marks omitted). This argument sounds only in irony, for there is nothing at all efficient about allowing a habeas petition to fully brief out, then sitting on one's hands for five months until discovering that things did not go as one intended, then belatedly attempting to convince the Court of something that could have been raised over six months prior.

Accordingly,

**IT IS ORDERED** that Respondent's motion to alter judgment, ECF No. 18, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2023.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge